ALBERT S. ELMORE, plaintiff in error, vs. WILEY SPEAR, et al., defendants in error.

A creditor who files a bill to enforce a legal right, and to collect his debt from legal assets, cannot be compelled to make other creditors parties to his bill.

In Equity, in Macon Superior Court.   Decision by Judge Lamar, at September, Term, 1858.

Albert S. Elmore filed this bill against Wiley Spear, John Spear and Samuel M. Strong, of the State of Alabama, and Davis Gamage, of Macon county, Georgia.   The bill states that about the 1st of May, 1854, Wiley Spear being indebted to John Spear, his son, the sum of $2,025 00, executed and delivered to him forty-five promissory notes, each for $45, payable the 25th December, 1854.   That John Spear, in the

fair and usual course of trade, and for a valuable consideration, endorsed and delivered said notes to complainant, who became the owner thereof. That before the notes became due, with a view to defeat their collection and the collection of other demands against said Wiley Spear, he left the State of Alabama and fled to parts unknown, and his residence is still unknown to plaintiff. That about the time he absconded, he placed in Strong's hands, about ten negroes, to carry off and sell, and convert the same into money, which could not be reached by plaintiff and other creditors of Wiley Spear. That the negroes were worth *three thousand six hundred dollars.*

The bill further states, that in the execution of this purpose of defeating and defrauding the creditors of the said Wiley, Strong about the 15th December, 1854, brought the negroes to Macon county, Georgia, where four of them were taken from him by one McGibbony and one Bickerstaff, for a debt which Bickerstaff held against said Wiley. That Davis Gamage purchased from Strong six of said negroes, with a full knowledge of all the facts, *communicated to him* by Strong. That Wiley Spear, John Spear, and Strong are insolvent. That complainant has not been able to ascertain where said negroes, sold to Gamage, are, or in whose possession they are.

The prayer of the bill is that complainant may have a decree against Wiley Spear for the amount of his demand, to be paid out of the negroes placed in the possession of Gamage by Strong or the proceeds of their sale, and that Gamage be decreed a trustee and compelled to account and pay to complainant the amount due to him, and for such other and further relief as the circumstances of the case require.

Samuel M. Strong, in his answer, says that he knows nothing of the indebtedness of Wiley Spear to complainant, of his own knowledge, but was informed by Spear that he was owing him a large amount, which he considered a confidential debt and intended to pay. He admits that ten or

eleven negroes were placed in his hands in the State of Georgia by one Sewell, a son-in-law of Wiley Spear, and that as agent he sold to Gamage *three* of said negroes for $1,100. That he sold to Bickerstaff, five of said negroes for about seventeen or eighteen hundred dollars, a large part of which was covered by demands which Bickerstaff held against Wiley Spear; and the balance was paid in money and a note for $250 payable to defendant. He admits that he stated to Gamage that Spear was in debt, that he had left property in Alabama sufficient to satisfy all judgments against him, and that he wished to sell the balance to enable him to pay some confidential debts and to compromise with his Charleston and New York creditors to the best advantage. He further admits that he stated to Gamage that Spear had a right to prefer creditors, to sell property unencumbered by judgment, and that the title would be good. That he subsequently and before the filing of complainant's bill, settled with Spear and took his receipt in full of all demands. Has not seen the negroes since he sold them to Gamage. Denies complainant's right to relief in equity; denies and repels the charge of fraud, &c.

Davis Gamage, answers, and admits that he purchased three negroes from Strong, belonging to Wiley Spear of Alabama, in December, 1854, for $1,100, which he has since sold; defendant speculates in negroes, and sold the negroes which he bought from Strong long before this bill was filed; does not know where they are now; denies all fraud; knows nothing of Spear's indebtness to complainant. Bought said negroes *bona fide*, and paid a fair and full price, and had no knowledge or suspicion that any fraud was being committed, or intended to be, on complainant or any other creditor of Spear.

Upon the case being called for trial, defendants counsel moved to dismiss the bill, on the grounds that it was a creditor's bill, and that complainant was prosecuting it alone and

in his own name only, and that it was necessary that the other creditors of Wiley Spear should be made parties.

After argument, the Court ordered, that complainant amend his bill making the creditors of Wiley Spear, parties complainants, or making an offer to them to come in as parties, &c.

To this order, counsel for complainant excepted.

MILLER & HALL, for plaintiff in error.

COOK & MONTFORT, *contra.*

*By the Court.*—McDONALD J. delivering the opinion.

This is not technically a creditor's bill. The assets which the creditor proposes to reach are not equitable, but legal assets. The only circumstance which authorizes the complainant to go into chancery, is his inability to identify the property or make the necessary proof to sustain a remedy at law, which otherwise, would be adequate, without a discovery from the defendant, which he avers to be necessary. A single creditor may file a bill to reach legal assets, and if he gains thereby a priority over other creditors, he will be entitled to retain it. *2nd Danl. Ch. Prac.* 204 &c; *Story's Equ. Jur. Sec.* 546, &c.

The defendant in such cases has no interest in the question so far as the rights of the creditors among themselves are concerned. If the complainant succeeds in holding the defendant to account, the costs must be paid from the fund, and expenses also, except those incurred by the defendant in sustaining his purchase, or his right to retain the amount actually paid by him. The creditors are not moving here to be made parties; not even Bostick whose evidence was taken in this case, and who must of course, know of the entire proceeding. The complainant may control his own case, *McDougald vs. Dougherty,* 11 *Ga.,* 588. And when a single creditor is in pursuit of *legal* assets, he cannot be forced

to divide with other creditors. It is otherwise with equitable assets. In this case the bill alleges that the defendant holds the property in trust for complainant and other creditors, but it discloses also, that the trust arises from the alleged fraud of the defendant and is implied in law and not that there was any trust created by contract for the payment of creditors.

Judgment reversed.